# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| ELIZABETH A. JORDAN, *individually* *and as Administratrix of the Estate of Deceased*, Wayne K. Jordan, | ) ) ) | CASE NO. 5:17-cv-02047 |
| Plaintiff, | ) | MAGISTRATE JUDGE KATHLEEN B. BURKE[1] |
| v. | ) | |
| SUMMIT COUNTY, OHIO and SUMMIT COUNTY BOARD of COMMISSIONERS, et al. | ) ) ) | <u>MEMORANDUM OPINION AND ORDER</u> |
| Defendants. | ) | |

     This case arises from the suicide of an inmate at the Summit County, Ohio, jail on February 12, 2016. Four months after being jailed pursuant to an indictment charging him with rape of a minor and four days before his scheduled trial date, Wayne K. Jordan ("Jordan") hanged himself in his cell.

     Jordan's widow, Plaintiff Elizabeth A. Jordan ("Plaintiff" or "Mrs. Jordan"), individually and as Administratrix of Jordan's estate, has filed a Complaint in which she alleges, among other things, that Defendants Summit County,[2] Summit County Sheriff Steve Barry, two Sheriff's Deputies,[3] and unnamed "John Doe" employees of the Summit County jail[4] were deliberately

---

[1] Pursuant to the consent of the parties, this case was transferred to the undersigned on July 26, 2018. Doc. 16.

[2] The Complaint names as Defendants Summit County, Ohio, and Summit County Commissioners in their official capacity. Doc. 1, ¶ 13. Defendants note that Summit County has no County Commissioners. Doc. 11, p. 10.

[3] The Defendant Deputies are Steven Scofield ("Scofield") and Rawney Trunko ("Trunko").

[4] Plaintiff has sued all individual Defendants in their individual and official capacities.

indifferent to Jordan's serious medical needs, leading to his death.  She asserts federal and state law claims and seeks damages.[5]

The parties have not yet taken discovery.  Defendants have filed a Motion to Dismiss ("Motion"), arguing, under Fed. R.Civ. P. 12(b)(6), that Plaintiff has failed to state a claim upon which relief can be granted and that they are entitled to qualified immunity and state statutory immunity.  Doc. 11.  Plaintiff has filed an opposition (Doc. 12) and Defendants have filed a reply (Doc. 13).  In her opposition, Plaintiff requests that Defendants' motion to dismiss be denied in its entirety or, alternatively, that she be granted leave to serve and file an amended complaint. Doc. 12.

 For the reasons explained below, the Motion is **GRANTED in part and DENIED in part**.  Plaintiff's request for leave to amend her complaint is **DENIED without prejudice**.

## I.      Background[6]

Plaintiff's Complaint alleges that Jordan, a 63 year old white male, was arrested on October 2, 2015, following issuance of a secret indictment alleging six counts of rape and three counts of gross sexual imposition involving a preteen female over a three-year period.  Doc. 1, ¶¶ 22, 31, 32.  As part of initial health screenings conducted by Summit County Jail employees, Jordan disclosed that a family member had committed suicide.  Doc. 1, ¶ 38.  Jordan was referred for a mental health evaluation.  Doc. 1, ¶ 38.  On October 14, 2015, an unknown deputy requested that Jordan be evaluated because the deputy felt that Jordan needed "to be on 1B for

---

[5] Plaintiff's Complaint also seeks injunctive relief but, in her opposition to Defendants' motion to dismiss, Plaintiff concedes that injunctive relief is not available. Doc. 12, p. 20.

[6] These background facts are taken from the Complaint and attached Exhibits.  When ruling on a motion to dismiss, the court "must accept as true all the factual allegations contained in the complaint."  *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-556 (2007)). Per Fed. R. Civ. P. 10(c), "a copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."

his safety [due to] his [history] of brain aneurysm & [patient's] actions like cutting in front of other inmates." Doc. 1, ¶ 43 (alterations in original), Doc. 1-6, p. 2. Also, on October 14, 2015, a deputy (unnamed) requested that Jordan be evaluated because the deputy felt that Jordan was anxious and depressed and he should not be in general population. Doc. 1, ¶ 44, Doc. 1-7. Jordan denied homicidal/suicidal ideation but reported being depressed and anxious due to never having been in jail before. Doc. 1-7. Jordan indicated he was having a hard time adjusting to being in jail. Doc. 1-7. He was willing to deal with the jail stressors and was open to counseling on a weekly basis. Doc. 1-7. During the October 14, 2015, evaluation, Jordan disclosed a psychiatric hospitalization during the prior year "due to making a sarcastic statement about suicide[.]" Doc. 1-7, p. 3. Following his October 14, 2015, evaluation, Jordan was diagnosed with adjustment disorder with mixed anxiety and depression and there was a recommendation for weekly counseling. Doc. 1-7, p. 6. It does not appear that counseling occurred. Doc. 1, ¶¶ 47, 48. Jordan was moved to Pod 1B but not placed on suicide watch. Doc. 1, ¶ 48. Over the next few months leading up to Jordan's scheduled trial, he expressed emotional distress and despair about his situation but denied suicidal/homicidal ideation and was happy that his wife was supporting him. Doc. 1, ¶¶ 58-62, Doc. 1-8, p. 3.

Summit County Jail Policies provide that deputies "must observe each inmate on the pod at least once every twenty (20) minutes and be certain of their well being." Doc. 1, ¶ 68 (quoting from Summit County Jail Policy No. 8.2.2, General Housing, effective January 1, 2002). Other Summit County Jail Policies require more frequent surveillance for mental health housing (at least every 15 minutes) and potentially suicidal inmates (irregular intervals, not to exceed 10 minutes). Doc. 1, ¶¶ 70, 71.

On February 12, 2016, Jordan committed suicide by using bedding to hang himself in his

cell. Doc. 1, ¶ 64. Before the suicide, at 11:20 a.m., Deputy Scofield served a lunch tray to the

inmates in Unit B; Mr. Jordan received his lunch tray. Doc. 1, ¶ 64(a), Doc. 1-1, p. 2 (Report of

Investigation). At 11:50 a.m., the lunch trays were removed and the inmates were placed in

lockup. Doc. 1, ¶ 64(b), Doc. 1-1, p. 2. Deputy Scofield conducted a key tour at 11:52 a.m.,

visually inspected each cell and noted nothing unusual. Doc. 1, ¶ 65(c), Doc. 1-1, p. 2. At 12:33

p.m., 41 minutes after Deputy Scofield had conducted a key tour, Deputy Trunko conducted a

key tour and found Jordan unresponsive in his cell, with his face appearing "blue." Doc. 1, ¶

65(d), Doc. 1-1, p. 2. Deputy Trunko called Central Control and requested that the cell door be

opened and he called for medical staff to respond. Doc. 1-1, p. 2. Deputy Trunko checked

Jordan for a pulse and found he did not have one. Doc. 1-1, p. 2. Medical staff arrived on scene

at 12:35 p.m. Doc. 1, ¶ 65(e). Once medical staff arrived, Jordan was rolled on his back and a

bed sheet was observed to be wrapped around his neck as a ligature, which was cut by Deputy

Trunko. Doc. 1-1, p. 2. Jordan was moved to the ground and resuscitation efforts were

commenced. Doc. 1, ¶ 65(e), Doc. 1-1, p. 2. The Akron Fire Squad arrived on scene at 12:38

p.m. Doc. 1, ¶ 65(f). Jordan was pronounced dead at 12:54 p.m., the cause of death being listed

as asphyxia due to hanging. Doc. 1-1, pp. 2, 3.

## II. Plaintiff's Complaint and Defendants' Motion to Dismiss

### A. Plaintiff's Complaint[7]

#### 1. First cause of action - 42 U.S.C. § 1983 civil rights claim for deliberate indifference

In her first cause of action, Plaintiff alleges that all Defendants acted with deliberate

---

[7] Plaintiff alleges five causes of action in her Complaint. Doc. 1, pp. 22-26. As noted above, Plaintiff concedes that injunctive relief, which is requested in her fifth cause of action, is not available. Doc. 12, p. 20. Therefore, the fifth cause of action will not be discussed further herein and Defendants' motion to dismiss will be granted as to that claim.

indifference to Jordan's serious medical need of suicidal risk intervention and in violation of his constitutional rights secured by the Fourteenth Amendment by: (1) failing to place him on any suicide prevention protocol although Jordan identified a prior suicide attempt and a significant number of known suicide risk factors, including depression, chronic medical conditions and a recent prior inpatient psychiatric hospitalization; (2) failing to adequately detect and monitor Jordan's worsening mental and emotional status between October 2, 2015, and February 12, 2016, as required under Summit County Jail policies; (3) failing to "observe all inmates" at 20 minutes intervals as required under Summit County Jail Policy No. 8.2.2, General Housing; (4) failing to respond to Jordan's medical emergency on February 12, 2016, with reasonable promptness and care; (5) failing to follow Summit County Jail Policy No. 7.1.0, Suicide Detection and Response, to immediately cut the blankets and sheets from around Jordan's neck; and (6) failing to adequately investigate and punish the acts of the offending individuals who deprived Jordan of his civil rights. Doc. 1, pp. 22-23, ¶ 84. Plaintiff alleges that Defendants' actions and omissions as described in the Complaint directly and proximately caused Jordan to sustain damages and extreme physical and emotional pain and suffering, which led to his death. Doc. 1, p. 23, ¶ 86.

### 2. Second cause of action – 42 U.S.C. § 1983 civil rights claim for failure to train

In her second cause of action, Plaintiff asserts a § 1983 failure to train claim against Defendant Barry and other as yet identified defendants with supervisory roles.[8] Doc. 1, p. 24, ¶¶ 97-90. Plaintiff alleges that the failure of these defendants to train Jail corrections staff had the effect of causing and/or ratifying the alleged unconstitutional indifference to Jordan's condition and risk of suicide and caused Jordan's suffering and death. Doc. 1, p. 24, ¶¶ 87-90.

---

[8] "An official capacity claim filed against a public employee is equivalent to a lawsuit directed against the public entity which that agent represents." *Scott v. Clay County, Tenn.*, 205 F.3d 867, 879 (6th Cir. 2000).

### 3. Third cause of action – Willful, wanton, and reckless conduct

Plaintiff's third cause of action appears to be a state law claim. Plaintiff alleges that the individual Defendants, while engaged in their functions as employees of the Jail, acted in a willful, wanton and reckless manner, disregarding the serious risk to Jordan's rights and safety, and such conduct was the direct and proximate cause of Jordan's suffering and death. Doc. 1, pp. 24-25, ¶¶ 91-92.

### 4. Fourth cause of action – Wrongful death

In her fourth cause of action, Plaintiff alleges a state law claim for wrongful death, arguing that Defendants' actions as described in the Complaint proximately caused Mr. Jordan's death. Doc. 1, p. 25, ¶¶ 93-95.

## B. Defendants' Motion to Dismiss

In their Motion to Dismiss, Defendants argue that (1) Plaintiff's Complaint fails to allege facts showing that Defendants were deliberately indifferent to Mr. Jordan (Doc. 11, pp. 4-7, Doc. 13, pp. 2-8); (2) the individual Defendants are entitled to qualified immunity (Doc. 11, pp. 7-10, Doc. 13, pp. 8-10); (3) the County Defendant is immune from liability pursuant to *Monell*[9] (Doc. 11, pp. 10-11, Doc. 13, pp. 10-11); (4) Plaintiff's Complaint fails to show how Defendant Barry or the County failed to train the deputies at the Jail (Doc. 11, pp. 11-13, Doc. 13, pp. 11-12); and (5) Plaintiff cannot succeed on her state law claims because Defendants are entitled to immunity under O.R.C. Chapter 2744 (Doc. 11, pp. 14-17, Doc. 13, p. 12).

## III. Law and Analysis

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell*

---

[9] *Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

*Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). *See also Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (clarifying the plausibility standard articulated in *Twombly*). The factual allegations of a pleading must be enough to raise a right to relief above the speculative level. *Twombly*, 550 U.S. at 555. The Court must accept all well-pleaded factual allegations as true but need not "accept as true a legal conclusion couched as a factual allegation." *Id.* "Plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (internal quotation marks omitted). Nevertheless, while it may be that a plaintiff may not ultimately succeed in proving her claims, "a well-pleaded complaint may proceed even if it appears 'that recovery is very remote and unlikely[.]' *Id.* at 556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)).

## A. 42 U.S.C. § 1983

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *Gray v. City of Detroit*, 399 F.3d 612, 615 (6th Cir. 2005) (quoting *West v. Atkins*, 487 U.S. 42, 48, 108 S. Ct. 2250, 101 L.Ed.2d 40 (1988)); *Watkins v. City of Battle Creek*, 273 F.3d 682, 685 (6th Cir. 2001) ("To establish a claim under 42 U.S.C. § 1983, a plaintiff must 'identify a right secured by the United States Constitution and the deprivation of that right by a person acting under color of state law.'") (quoting *Russo v. City of Cincinnati*, 953 F.2d 1036, 1042 (6th Cir. 1992); *see also Jerauld v. Carl*, 405 Fed. Appx. 970, 974-975 (6th Cir. Dec. 30, 2010).

Plaintiff alleges a violation of Jordan's constitutional rights, arguing Defendants violated his right to be free from deliberate indifference to a serious medical need, the right to be free

from cruel and unusual punishment and the right to reasonable medical treatment while detained so as not to unnecessarily and wantonly inflict pain. Doc. 1, p. 23, ¶ 85, Doc. 12, pp. 8-12 (citing both Eighth and Fourteenth Amendment protections).

The individually named Defendants have raised qualified immunity as a defense. "[Q]ualified immunity shields officials from civil liability if their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Richmond v. Huq*, 885 F.3d 928, 947 (6th Cir. 2018) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009). If qualified immunity applies, it is "an immunity from suit rather than just a mere defense to liability[.]" *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S.Ct. 808, 172 L.E.2d 565 (2009). While acknowledging that "insubstantial claims against government officials should be resolved as early in the litigation as possible, preferably prior to broad discovery, [the Sixth Circuit] also ha[s] cautioned that it is generally inappropriate for a district court to grant a 12(b)(6) motion to dismiss on the basis of qualified immunity[,]" noting that summary judgment is generally the more appropriate time to resolve qualified immunity. *See Courtright v. City of Battlecreek*, 839 F.3d 513, 518 (6th Cir. 2016) (internal quotations and citations omitted); *see also Greer v. City of Highland Park, Michigan*, 884 F.3d 310, 317 (6th Cir. 2018) (affirming denial of motion for judgment on the pleadings based on qualified immunity) (citing *Courtright*, 839 F.3d at 518).

There are two steps in a Court's qualified immunity analysis. In Step 1, the Court decides whether, viewing the allegations in a light most favorable to the party injured, a constitutional right has been violated. In Step 2, the Court must determine whether that right was clearly established. *Richmond v. Huq*, 885 F.3d at 947 (quoting *Estate of Carter v. City of Detroit*, 408 F.3d 305, 310–11 (6th Cir. 2005, citing *Saucier v. Katz*, 533 U.S. 194, 201, 121

S.Ct. 2151, 150 L.Ed.2d 272 (2001)). "Ultimately, the plaintiff bears the burden of showing that an officer is not entitled to the defense of qualified immunity." *Courtright*, 839 F.3d at 518.

The Eighth Amendment prohibits "deliberate indifference to serious medical needs of prisoners [because it] constitutes 'unnecessary and wanton infliction of pain.'" *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) (internal citation omitted). Thus, "[a] prisoner's Eighth Amendment right is violated when prison doctors or officials are deliberately indifferent to the prisoner's serious medical needs." *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001) (citing *Estelle*, 429 U.S. at 103). "[P]rison officials who have been alerted to a prisoner's serious medical needs are under an obligation to offer medical care to such a prisoner." *Comstock*, 273 F.3d at 702 (citing *Danese*, 875 F.2d at 1244).

Jordan was a pretrial detainee. The Sixth Circuit, along with "other circuits, have held that the Eighth Amendment cruel and unusual punishment analysis used by the Court in *Estelle* . . . is applicable to pretrial detainees." *Danese v. Asman*, 875 F.2d 1239, 1243 (6th Cir. 1989) (full internal citation omitted) (discussing *Bell v. Wolfish*, 441 U.S. 520, 535 (1979) wherein the Supreme Court concluded that, "under due process of law, pretrial detainees may not be punished because they have not yet been judged guilty."); *see also Gray*, 399 F.3d at 615-616 ("While the Eighth Amendment does not apply to pre-trial detainees, the Due Process Clause of the Fourteenth Amendment does provide [pre-trial detainees] with a right to adequate medical treatment that is analogous to prisoner's rights under the Eighth Amendment.") (citing *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244, 103 S.Ct. 2979, 77 L.Ed.2d 605 (1983); *Watkins v. City of Battle Creek*, 273 F.3d 682, 685-86 (6th Cir. 2001)).

With respect to a deliberate indifference claim under the Eighth Amendment, the Sixth Circuit has explained that:

An Eighth Amendment claim has two components, one objective and one subjective. [10] To satisfy the objective component, the plaintiff must allege that the medical need at issue is "sufficiently serious." *Farmer v. Brennan,* 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). To satisfy the subjective component, the plaintiff must allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk. *Farmer,* 511 U.S. at 837, 114 S.Ct. 1970. Emphasizing the subjective nature of this inquiry, the Supreme Court has noted that "an official's failure to alleviate a significant risk that *he should have perceived but did not,* while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Id.* at 838, 114 S.Ct. 1970 (emphasis added).

*Comstock*, 273 F.3d at 702-703.

"[T]o satisfy the objective component of an Eighth Amendment claim, the plaintiff must allege that the medical need at issue is 'sufficiently serious.'" *Comstock*, 273 F.3d at 703 (quoting *Farmer*, 511 U.S. at 834). Here, Plaintiff alleges that Mr. Jordan's medical emergency and psychological needs, including suicidal tendencies, were the medical needs at issue. Doc. 1. The Sixth Circuit has held that "a prisoner's 'psychological needs may constitute serious medical needs, especially when they result in suicidal tendencies.'" *Id.* (quoting *Horn v. Madison Cty. Fiscal Ct.*, 22 F.3d 653, 660 (6th Cir. 1994).

---

[10] Whether a pretrial detainee has to satisfy the subjective intent element is a question subject to some debate. In 2015, "[t]he Supreme Court in *Kingsley v. Hendrickson*, — U.S. —, 135 S.Ct. 2466, 192 L.Ed.2d 416 (2015), held that a pretrial detainee's Fourteenth Amendment excessive force claim need only meet the objective component of showing that the 'force purposely or knowingly used against him was objectively unreasonable.'" *Richmond v. Huq*, 885 F.3d 928, 938, n. 3 (6th Cir. 2018)) (quoting *Kingsley*, 135 S.Ct. at 2473). Noting that the Sixth Circuit had "not yet considered whether *Kingsley* similarly abrogate[d] the subjective intent requirement of a Fourteenth Amendment deliberate indifference claim[,]" the Sixth Circuit in *Richmond* observed "that this shift in Fourteenth Amendment deliberate indifference jurisprudence call[ed] into doubt whether the" detainee had to satisfy the subjective component. *Id.* Notwithstanding the court's observations, the court in *Richmond* proceeded to apply the Eighth Amendment standard. *Id.* at 938, 939. Also, other cases within the Sixth Circuit have "applied the Eighth Amendment [deliberate indifference] standard to inadequate-medical-care claims brought by pretrial detainees even after *Kingsley*." *Gilmore v. York*, 2018 WL 1737120, * 8 (E.D. Mich. Apr. 4, 2018); *Phelps v. Tuscarawas County, Ohio/Tuscarawas County Board of Commissioners*, 2018 WL 2234917, * 8, n. 11 (N.D. Ohio May 16, 2018) (noting that the Sixth Circuit had not yet determined whether *Kingsley* abrogated the subjective component of a Fourteenth Amendment deliberate indifference claim). Here, neither party has cited or addressed *Kingsley* or argued that *Kingsley* changed the deliberate indifference standard. Thus, in resolving the pending motion to dismiss, the Court applies both the objective and subjective components of the Eighth Amendment deliberate indifference standard as have other courts since *Kingsley*.

The subjective component requires that a plaintiff "allege facts, which if true, would show that (1) the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, (2) that he did in fact draw that inference, and (3) that he disregarded that risk." *Jerauld*, 405 Fed. Appx. at 975-976 (quoting *Comstock*, 273 F.3d at 703 (internal quotations omitted). When a plaintiff alleges "deliberate indifference [he] must show more than negligence or the misdiagnosis of an ailment . .. [but] a plaintiff need not show that the official acted for the very purpose of causing harm or with knowledge that harm will result." *Comstock*, 273 F.3d at 703 (citing *Estelle*, 429 at 206; *Farmer*, 511 U.S. at 835; *Horn*, 22 F.3d at 660) (internal quotations omitted). Thus, "deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id.* (citing *Farmer*, 511 U.S. at 836).

The Sixth Circuit has indicated that the proper inquiry for determining liability under § 1983 for a pretrial detainee's suicide is "whether the decedent showed a strong likelihood that he would attempt to take his own life in such a manner that failure to take adequate precautions amounted to deliberate indifference to the decedent's serious medical needs." *Russell v. Davis*, 522 Fed. Appx. 314, 317 (6th Cir. Apr. 10, 2013) (quoting *Barber v. City of Salem*, 953 F.2d 232, 239-240 (6th Cir. 1992)).

### 1. Individual Defendants

The two steps of the qualified immunity analysis may be addressed in any order but, if both steps are not satisfied, then qualified immunity shields an individual government officer from civil damages. *Courtright*, 839 F.3d 518. Defendants do not contend that the law that "prison officials who have been alerted to a prisoner's serious medical needs are under an obligation to offer medical care to such a prisoner[,]" (*Comstock*, 273 F.3d at 702 (citing

*Danese*, 875 F.2d at 1244)), was not clearly established at the time of Jordan's suicide. Thus, the focus of the Court's inquiry is on the first prong of the qualified immunity analysis, i.e., "whether, considering the allegations in a light most favorable to the party injured, a constitutional right has been violated." *Richmond*, 885 F.3d at 947.

The Sixth Circuit has also stated that a "plaintiff must allege with particularity 'facts that demonstrate what *each* defendant did to violate the asserted constitutional right.'" *Courtright*, 839 F.3d at 518 (emphasis in original). Thus, the Court separately considers below the allegations asserted against each of the individual Defendants[11] to assess whether qualified immunity applies.

### a. Defendant Trunko

The Court concludes that Plaintiff's Complaint states a plausible constitutional claim for deliberate indifference as against Deputy Trunko. As alleged in the Complaint, on February 12, 2016, Defendant Trunko found Mr. Jordan unresponsive in his cell at 12:33 p.m. and called for assistance. Doc. 1, ¶ 65(d). This allegation is sufficient to state a plausible claim that Defendant Trunko subjectively perceived facts from which to infer a substantial risk to Mr. Jordan and did draw that inference. Further, Plaintiff alleges that Defendant Trunko failed to respond with reasonable promptness and care to Mr. Jordan's medical emergency on February 12, 2016. Doc. 1, ¶¶ 75, 76,[12] 84(d). This allegation is sufficient to state a plausible claim that Defendant

---

[11] As discussed above, Plaintiff has sued the individual Defendants in their individual and official capacity. "An official capacity claim filed against a public employee is equivalent to a lawsuit directed against the public entity which that agent represents." *Scott*, 205 F.3d at 879.

[12] Plaintiff's Complaint alleges that Deputy Trunko, not Deputy Scofield, discovered Mr. Jordan unresponsive and the incident report referred to by Plaintiff in ¶ 76 of her Complaint also indicates that Deputy Trunko found Mr. Jordan. *See* Doc. 1, ¶ 65(d), Doc. 1-10, p. 3; *see also* Doc. 12 (Plaintiff's opposition brief, indicating that Deputy Trunko found Mr. Jordan). Thus, the reference in ¶ 76 of the Complaint to Deputy Scofield appears to be a scrivener's error.

Trunko disregarded the substantial risk to Mr. Jordan. While Plaintiff ultimately may not succeed in proving her claims, "a well-pleaded complaint may proceed even if it appears 'that recovery is very remote and unlikely[.]' *Twombly*, 550 U.S. at 556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)).

For the reasons stated, the Court **DENIES** Defendants' motion to dismiss the individual § 1983 claim against Defendant Trunko (first cause of action) for failure to state a claim and/or based on qualified immunity.

### b. Defendant Scofield

The Court concludes that Plaintiff's Complaint fails to state a plausible constitutional claim for deliberate indifference as against Deputy Scofield. Plaintiff's Complaint contains no factual allegations from which it can plausibly be said that Defendant Scofield "subjectively perceived facts from which to infer substantial risk to [Jordan.]" *Jerauld*, 405 Fed. Appx. at 975-976. With respect to Deputy Scofield, the Complaint alleges only that he served lunch to the inmates in Jordan's unit at 11:20 a.m. and conducted a key tour at 11:52 a.m. Doc. 1, ¶¶ 65(a), (c). These allegations are insufficient to state a plausible claim that Deputy Scofield was deliberately indifferent to Jordan's serious medical needs under the subjective component of the deliberate indifference standard.

There is no allegation that Deputy Scofield knew that Jordan was at risk of committing suicide on February 12, 2016. For example, while Plaintiff alleges that, on October 14, 2015, Jordan disclosed that he was hospitalized approximately six months prior to his arrest for making statements regarding suicide and that a close family member had committed suicide, Doc. 1, ¶¶

28, 45,[13] the Complaint does not allege that this information was known by or relayed to Deputy

Scofield.[14] Further, there is no allegation that Jordan relayed an intent to harm himself to Deputy

Scofield or exhibited to Deputy Scofield behaviors from which Scofield would have inferred that

Jordan was at a substantial risk for suicide on February 12, 2016. In fact, the Report of

Investigation attached to Plaintiff's Complaint indicates that, when Scofield conducted a key tour

at 11:52 a.m., he visually inspected each cell and noted nothing unusual. Doc. 1-1, p. 2.

Plaintiff relies on her allegations that Jordan had a number of suicide risk factors,

including being a white male, being held on an offense involving sexual assault of a minor,

having no history of prior arrests depression, chronic medical conditions, and recent history of

inpatient hospitalization and suicidal behavior. Plaintiff argues, from these factors, that

Defendants "*should have drawn the inference that Mr. Jordan was a suicide risk*." Doc. 12, p.

11 (emphasis supplied). However, those allegations are insufficient to state a plausible claim for

deliberate indifference against Defendant Scofield.[15] As stated by the Supreme Court in *Farmer*,

"an official's failure to alleviate a significant risk that *he should have perceived but did not*,

while no cause for commendation, cannot under our cases be condemned as the infliction of

punishment." *Farmer*, 511 U.S. at 838 (emphasis supplied). For instance, courts have rejected

---

[13] Exhibit F (Doc. 1-7) to the Complaint indicates that Jordan disclosed to a licensed social worker with Summit Psychological Associates, Inc. that he had a psychiatric hospitalization "due to making a sarcastic statement about suicide a year ago." Doc. 1-7, p. 3.

[14] Moreover, courts have found no liability even when there is knowledge of prior suicidal thoughts or statements. *See e.g.*, *Soles v. Ingham*, 148 Fed. Appx. 418, 419-420 (6th Cir. 2005) (finding defendants not deliberately indifferent due to their decision to return decedent to general population where decedent had expressed no suicidal thoughts for approximately two weeks and exhibited no increased risk for suicide); *Ellis v. Washington Cty., Tenn.*, 80 F.Supp.2d 791, 800-801 (E.D. Tenn. 1998), *affirmed* 198 F.3d 225, 227 (6th Cir. 1999) (finding defendant entitled to qualified immunity where "the most that [could] be said about [defendant] [was] he knew [decedent] had been suicidal in the recent past.").

[15] Plaintiff also includes allegations in her Complaint regarding letters Jordan sent to his wife and phone calls that he had with her. Doc. 1, ¶¶ 59, 62. There is no allegation that the letters were reviewed by the individual Defendants and, while Plaintiff alleges that the phone calls were recorded, there is no allegation that the individual Defendants heard the phone calls.

claims that officials should have been on notice that a detainee was a suicide risk on the basis that a detainee fit a profile of someone being most likely to commit suicide, finding that, "[j]ail officials cannot be charged with knowledge of a particular detainee's high suicide risk based solely on the fact that the detainee fits a profile of individuals who purportedly are more likely to commit suicide than those who do not fit the profile in all respects." *Crocker ex rel. Estate of Tarzwell v. County of Macomb*, 119 Fed. Appx. 718, 723 (6th Cir. Jan. 4, 2005); *Baker-Schneider v. Napoleon*, 2018 WL 1326296, * 9 (E.D. Mich. Mar. 15, 2018) ("[A] plaintiff cannot ever establish an officer's subjective knowledge of an inmate's risk of suicide based on a profile of individual's likely to commit suicide.") (relying on *Crocker*, 119 Fed. Appx. at 723).

Similarly, here, Plaintiff claims that Defendants *should have known or should have drawn an inference*, based on generalized "suicide risk factors." The factual allegations of a pleading must be sufficient to raise a right to relief above the speculative level. *Twombly*, 550 U.S. at 555. And, while the Court must accept all well-pleaded factual allegations as true, the Court need not "accept as true a legal conclusion couched as a factual allegation." *Id*. "Plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. (internal quotation marks omitted). Accordingly, even if true, the Court finds that the allegations in the Complaint do not state a claim for deliberate indifference against Defendant Scofield.

Plaintiff's conclusory allegation that Defendants failed to adequately detect and monitor Mr. Jordan's worsening mental and emotional status, Doc. 1, ¶ 84, does not state a claim for relief under applicable § 1983 case law. The Sixth Circuit has observed, "the right to medical care for serious medical needs does <u>not</u> encompass the right to be screened correctly for suicidal tendencies." *Id.* (internal quotations omitted) (emphasis supplied); *Gray*, 399 F.3d at 616

(indicating that "there is no general constitutional right of detainees to receive suicide screenings or be placed in suicide safe facilities, unless the detainee has somehow demonstrated a strong likelihood of committing suicide[]") (discussing *Barber v. City of Salem, Ohio*, 953 F.2d 232, 237 (6th Cir. 1992) and citing *Danese*, 875 F.2d at 1244 and *Crocker v. County of Macomb*, 199 Fed Appx. 718, 724 (6th Cir. 2005)(unpublished)). Also, the Supreme Court recently held "no decision of this Court establishes the right to the proper implementation of adequate suicide prevention protocols." *Taylor v. Barkes*, — U.S. —, 135 S.Ct. 2042, 2044, 192 L.Ed.2d 78 (2015); *see also Broughton v. Premier Health Care Services, Inc.*, 656 Fed. Appx. 54, 57 (6th Cir. July 15, 2016) (quoting *Comstock*, 273 F.3d at 703 and *Taylor*, 135 S.Ct. at 2044).

Nor does Plaintiff's additional conclusory allegation that Defendants were deliberately indifferent to Jordan's serious medical needs because they failed to follow or adequately adhere to Jail policies, Doc. 1, ¶ 84, state a claim for relief under § 1983. *See Barber*, 953 F.2d at 240 ("failure to comply with a state regulation is not itself a constitutional violation[]"); *see also Smith v. Eyke*, 2011 WL 1528155, * 9 (W.D. Mich. Apr. 20, 2011) ("Defendants' alleged failure to comply with a statute, administrative rule, or policy does not itself rise to the level of a constitutional violation.") (citing Sixth Circuit cases, including *Barber*, 953 F.2d at 240).

For the reasons discussed above, the Court **GRANTS** Defendant's motion to dismiss the individual § 1983 claim against Defendant Scofield (first cause of action) for failure to state a claim and/or based on qualified immunity.

### c. Defendant Barry

The Court concludes that Plaintiff's Complaint fails to state a plausible constitutional claim for deliberate indifference as against Sheriff Barry. In her opposition brief, Plaintiff states that "Plaintiff has not alleged that Defendant Barry had any direct responsibility for supervision

of Mr. Jordan or that he had any greater awareness of a suicide risk tha[n] the defendant deputies." Doc. 12, p. 14. Considering this statement, and finding no allegations specific to Defendant Barry in the Complaint that would state a plausible claim that he was deliberately indifferent to Jordan's serious medical needs under the subjective component of the deliberate indifference standard, the Court **GRANTS** Defendant's motion to dismiss the individual § 1983 claim against Defendant Barry (first cause of action) for failure to state a claim and/or based on qualified immunity.

### 2. Municipal Liability Claim against Summit County

Plaintiff contends that Summit County is liable under § 1983 for failing to properly train and supervise its staff and for implicitly authorizing, approving, ratifying or acquiescing in unconstitutional conduct. Doc. 12, pp. 16-18. Unlike individual government officers, "a municipality is not entitled to qualified immunity." *Barber*, 953 F.2d at 237.

In *City of Canton, Ohio v. Harris*, the Supreme Court explained that:

> In *Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), we decided that a municipality can be found liable under § 1983 only where the municipality *itself* causes the constitutional violation at issue. *Respondeat superior* or vicarious liability will not attach under § 1983. *Id.,* at 694–695, 98 S.Ct. at 2037–38. "It is only when the 'execution of the government's policy or custom ... inflicts the injury' that the municipality may be held liable under § 1983." *Springfield v. Kibbe,* 480 U.S. 257, 267, 107 S.Ct. 1114, 1119, 94 L.Ed.2d 293 (1987) (O'CONNOR, J., dissenting) (quoting *Monell, supra,* 436 U.S., at 694, 98 S.Ct. at 2037–38).

*City of Canton, Ohio v. Harris*, 489 U.S. 378, 385, 109 S. Ct. 1197, 1203, 103 L. Ed. 2d 412 (1989).

The Supreme Court held that:

> the inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact.[] This rule is most consistent with our admonition in *Monell,* 436 U.S., at 694, 98 S.Ct., at 2037, and *Polk County v. Dodson,* 454 U.S. 312, 326, 102 S.Ct. 445, 454, 70 L.Ed.2d 509 (1981), that a

municipality can be liable under § 1983 only where its policies are the "moving force [behind] the constitutional violation." Only where a municipality's failure to train its employees in a relevant respect evidences a "deliberate indifference" to the rights of its inhabitants can such a shortcoming be properly thought of as a city "policy or custom" that is actionable under § 1983.

*City of Canton*, 489 U.S. at 388–89 (footnote omitted). In discussing a plaintiff's failure to train claim, the Sixth Circuit explained that:

In order to prevail against a municipality, the plaintiff must show that inadequate training represented a city policy and that the need for better training was so obvious and the inadequacy so likely to result in a violation of a constitutional rights, that the municipality can be said to have been deliberately indifferent to the need.

*Barber*, 953 F.2d at 235-236 (citing *City of Canton*, 109 S.Ct. at 1204-1205).

While Plaintiff ultimately may not succeed in proving her claims, "a well-pleaded complaint may proceed even if it appears 'that recovery is very remote and unlikely[.]' *Twombly*, 550 U.S. at 556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)). At this early stage of the proceedings, the Court finds that Plaintiff has sufficiently pled a *Monell* claim.

For the reasons stated, the Court **DENIES** Defendants' motion to dismiss the §1983 claims asserted against Defendant Summit County (first and second causes of action).

## B. State law claims

Defendants seek dismissal of Plaintiff's third and fourth causes of action based on state law immunity.

Ohio courts use a three-tiered analysis to determine whether a political subdivision is immune from liability in a tort action. *Cramer v. Auglaize Acres*, 113 Ohio St.3d 266, 270 (2007) (internal citations omitted). First, there is "the general rule that a political subdivision is immune from liability incurred in performing either a governmental or proprietary function." *Id.* That immunity is not absolute. *Id.* Second, the court looks at whether any of the five exceptions

to immunity contained in R.C. § 2744.02(B) apply to open the political subdivision up to liability. *Id.* If any of the exceptions to immunity in R.C. § 2744.02(B) apply and if there is no defense within that section that protects the political subdivision from liability, then the third step requires the court to assess whether any of the defenses under R.C. § 2744.03 apply. *Id.*

Defendants contend that there are no exceptions to immunity under R.C. § 2744.02(B) and therefore Summit County, a political subdivision, is immune from liability, pointing out that the exception in R.C. § 2744.02(B)(4) pertaining to injury or death caused by negligence of the political subdivision's employees that occurs within or on the grounds of buildings used in connection with the performance of a governmental function excludes jails. Plaintiff does not raise a specific challenge to Defendants' argument that the political subdivision itself is entitled to immunity under R.C. § 2744.02; she argues that Defendants ignore that she is not arguing that Defendant's employees were merely negligent but rather that the Defendant's employees' conduct was wanton and reckless. Doc. 12, p. 19. As discussed below, the allegation that the Defendant employees acted wantonly or recklessly pertains to whether the individual Defendants are entitled to statutory immunity. The Court finds that Plaintiff's state law claims should be dismissed against Defendant Summit County based on the statutory immunity found in R.C. § 2744.02 (third and fourth causes of action).

As it pertains to individual employees of a political subdivision, the immunity analysis is different. *Cramer*, 113 Ohio St.3d at 270. Instead of the three-tiered analysis, a court looks at R.C. § 2744.03(A)(6). *Id.*; *see also Gattrell v. Utica*, 63 N.E.2d 461, 470 (5th Dist. 2016). Under R.C. § 2744.03(A)(6), "an employee is immune from liability unless the . . . employee's acts or omissions were malicious, in bad faith, or wanton or reckless . . ." *Cramer*, 113 Ohio St.3d at 270. (citing R.C. § 2744.03(A)(6)). Having concluded that Defendant Trunko is not

entitled to qualified immunity on the § 1983 deliberate indifference claim and considering that Plaintiff's Complaint alleges that the individual Defendants' acts or omissions were done in a wanton or reckless manner, the Court finds that Plaintiff's state law claims against Defendant Trunko in his individual capacity are not subject to dismissal at this juncture (third and fourth causes of action).   However, for reasons similar to those discussed above in connection with Plaintiff's § 1983 claims against Defendants Scofield and Barry, the Court finds that the state law claims against those Defendants should be dismissed based on state law immunity (third and fourth causes of action).

## IV. Plaintiff's Request for Leave to Amend Complaint

In her opposition brief, Plaintiff requests that, if the Court "is persuaded to dismiss all or any part of [Plaintiff's] Complaint that Plaintiff be permitted to file an Amended Complaint to cure any defects in the pleading."  Doc. 12, p, 20.

While Fed. R. Civ. P. 15(a)(2), provides that a "court should freely give leave when justice requires[,]" a request for an order granting leave to amend, as any motion, must comply with Fed. R. Civ. P. 7 and "state with particularity the grounds for seeking the order[.]"  *See e.g., Tumminello v. Father Ryan High School, Inc.*, 678 Fed. Appx. 281, 289-290 (6th Cir. Jan. 30, 2017) (affirming district court's denial of plaintiff's request for leave to amend submitted in response to a motion to dismiss where the request did not state the grounds for seeking the order and where the court did not know the substance of the proposed amendment).

Here, Plaintiff has not filed a motion.  Nor has she stated the grounds for seeking leave to amend or apprised this Court of the specifics of how she proposes to amend her Complaint. Accordingly, the Court **DENIES without prejudice** Plaintiff's request for leave to amend her complaint, because the Court is unable to find that justice requires granting such leave.  *Id.* ("[I]n

order to determine whether justice requires the granting of a motion to amend, the court must know the substance of the proposed amendment.").  In making this ruling, the Court notes that Plaintiff has included John Doe Defendants in Complaint.  Recognizing that discovery has not yet commenced, the Court intends, at the Case Management Conference, to provide a deadline by which Plaintiff will be required to seek leave to amend her Complaint to identify the John Doe Defendants and set forth her claims against those defendants.

### V. Conclusion

For the reasons explained herein, Defendants' motion to dismiss is **GRANTED in part and DENIED in part**.  Defendants' motion to dismiss the first cause of action is **DENIED** as to Defendant Trunko in his individual capacity and **GRANTED** as to Defendants Scofield and Barry in their individual capacities based on failure to state a claim for relief and/or qualified immunity.  Defendants' motion to dismiss the first and second causes of action as to Defendant Summit County is **DENIED**.  Defendants' motion to dismiss the third and fourth causes of action as to Summit County and Defendants Scofield and Barry in their individual capacities is **GRANTED** based on state law immunity.  Defendants' motion to dismiss the third and fourth causes of action as to Defendant Trunko in his individual capacity is **DENIED.**  Defendants' motion to dismiss the fifth cause of action is **GRANTED**.  Plaintiff's request for leave to amend her complaint is **DENIED without prejudice**.


September 11, 2018                                    */s/ Kathleen B. Burke*
                                              _____
                                              Kathleen B. Burke
                                              United States Magistrate Judge