# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| **ELIZABETH A. JORDAN**, | ) | **CASE NO.:  5:17-CV-02047** |
| | ) | |
| Plaintiff, | ) | **MAGISTRATE JUDGE** |
| | ) | **KATHLEEN BURKE** |
| v. | ) | |
| | ) | **PLAINTIFF'S OPPOSITION TO** |
| **SUMMIT COUNTY, OHIO, et al.** | ) | **DEFENDANTS' MOTION FOR** |
| | ) | **SUMMARY JUDGMENT (DOC#: 40)** |
| Defendants. | ) | |

Now comes Plaintiff Elizabeth A. Jordan, individually and in her capacity as Administratrix of the Estate of Mr. Wayne K. Jordan ("Mr. Jordan"), to respond in opposition to Defendants' motion for summary judgment (Doc#: 40) as to all remaining defendants and claims.

For the reasons set forth more fully in the attached Memorandum in Support of Plaintiff's opposition, Plaintiff respectfully requests that this Court deny Defendants' motion.

Respectfully submitted,

/s/ Melissa D. Berry
**Melissa D. Berry** (#0061935)
4638 5th Street NW
Canton, Ohio 44708
mberry1@neo.rr.com
Phone: (330) 546-7529
Fax:    (330) 915-4858

*Attorney for Plaintiff*

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION………………………………………………………  1

II.     SUMMARY OF ARGUMENT……………………………………………  1

III.   STATEMENT OF RELEVANT FACTS…………………………………...  2

     A.    Mr. Jordan Never Received a Mental Health Evaluation by a
          Qualified Provider and Never Received Mental Health Treatment
          While Incarcerated…………………………………………………………  2

     B.    Knowledge of Persons Outside the Summit County Jail Is Irrelevant……  4

     C.    County Defendants Failed to Train Deputies……………………………  6

          1.    Summit County Deputies Were Not Trained to Observe
                Risks of Inmate Suicide …………………………………………  6

          2.    Inaccurate Records Make It Impossible to Know Whether
                Mr. Jordan Could Have Been Saved……………………………  7

     D.    There Are Material Issues About If and When Deputy Trunko
          Observed Mr. Jordan………………………………………………………  9

     E.    Plaintiff Is Entitled to a Negative Inference for Missing Records………  10

IV.   STANDARD ON MOTION FOR SUMMARY JUDGMENT………………  11

V.    ARGUMENT……………………………………………………………...  12

     A.    Defendants Violated 42 U.S.C. §1983…………………………………..  12

     B.    Defendants Are Not Entitled to Qualified Immunity……………………  13

          1.    Defendants Are Not Entitled to Qualified Immunity for
                §1983 Claims……………………………………………………  13

          2.    Deputy Trunko Is Not Entitled to Qualified Immunity for
                Plaintiff's State Law Claims……………………………………  14

          3.    Qualified Immunity Is Not Appropriate for Summary
                Judgment…………………………………………………………  14

     C.    Violations of the Fourteenth Amendment Do Not Require Subjective
          Knowledge…………………………………………………………………  15

     D.    Defendants Caused Mr. Jordan to Suffer the Deprivation of His
          Fourteenth Amendment Rights……………………………………………  16

     E.    Summit County, Ohio, and Sheriff Barry's Failure to Train and
          Supervise Caused the Constitutional Violations…………………………  18

i

F.      Summit County's Official Policies and Customs Deprived Mr. Jordan of His Constitutional Rights…………………………………………..    19

G.      Deputy Trunko's Reckless Disregard for Inmate Safety Caused the Wrongful Death of Mr. Jordan…………………………………………..    20

**VI.**      **CONCLUSION**……………………………………………………………...    20

# TABLE OF AUTHORITIES

**Cases**                                                                 **Pages**

*Alspaugh v. McConnell,*
  643 F.3d 162 (6th Cir. 2011)……………………………………………..   17

*Anderson v. Liberty Lobby, Inc.,*
  477 U.S. 242 (1986)…………………………………………………………   12

*Baker v. Union Township,*
  587 Fed.Appx. 229 (6th Cir. 2014)……………………………………………   13

*Bennett v. City of Eastpointe,*
  410 F.3d 810 (6th Cir. 2005)……………………………………………..   19

*Bobo v. United Parcel Service, Inc.,*
  665 F.3d 741 (6th Cir. 2012)……………………………………………..   11

*Brandon v. Holt,*
  469 U.S. 464 (1985)…………………………………………………...   12

*Brown v. Bargery,*
  207 F.3d 863 (6th Cir. 2000)……………………………………………..   17

*City of Canton, Ohio v. Harris,*
  489 U.S 378 (1989)…………………………………………………………   19

*Clark-Murphy v. Foreback,*
  439 F.3d 280 (6th Cir. 2006)……………………………………………..   18

*Comstock v. McCrary,*
  273 F.3d 693 (6th Cir. 2001)……………………………………………..   13, 17

*Cox v. Kentucky Dept. of Transp.,*
  53 F.3d 146 (6th Cir. 1995)………………………………………………   12

*Dominguez v. Correctional Medical Services,*
  555 F.3d 543 (6th Cir. 2009)……………………………………………..   18

*Estate of Carter v. City of Detroit,*
  408 F.3d 305 (6th Cir. 2005)……………………………………………..   17

*Estate of Ridley v. Hamilton Cnty. Bd. of Mental Retardation &
Developmental Disabilities,*
  102 Ohio St.3d 230 (2004)…………………………………………………   20

*Estelle v. Gamble,*
  429 U.S. 97 (1976)…………………………………………………………   16

*Fabrey v. McDonald Village Police Dept.,*
  70 Ohio St.3d 351 (1994)………………………………………………...   14

*Farmer v. Brennan*,
　　511 U.S. 825 (1994)……………………………………………………...　　16, 17, 18

*Fitzke v. Shappell*,
　　468 F.2d 1072 (6th Cir. 1972)……………………………………………　　13

*Green v. Throckmorton*,
　　681 F.3d 853 (6th Cir. 2012)……………………………………………..　　15

*Gregory v. City of Louisville*,
　　444 F.3d 725 (6th Cir. 2006)……………………………………………..　　19

*Harbin v. City of Detroit*,
　　147 F. App'x 566 (6th Cir. 2005)………………………………………..　　16

*Heflin v. Stewart County, Tennessee*,
　　958 F.2d 709 (6th Cir. 1992)……………………………………………..　　19

*Helling v. McKinney*,
　　509 U.S. 25 (1993)……………………………………………………….　　17

*Hopper v. Phil Plummer*,
　　887 F.3d 744 (6th Cir. 2018)……………………………………………..　　20

*Horn v. Madison Cty. Fiscal Ct.*,
　　22 F.3d 653 (6th Cir 1994)………………………………………………..　　13, 17

*Irving v. Austin*,
　　138 Ohio App.3d 552 (2000)……………………………………………..　　14

*Jackson v. Butler County Bd. Of Comm'rs*,
　　76 Ohio App.3d 448 (1991)………………………………………………　　14

*Kingsley v. Hendrickson*,
　　___ U.S. ___, 135 S.Ct. 2466 (2015)……………………………………..　　1, 15-16

*Kottmyer v. Maas*,
　　436 F.3d 684 (6th Cir. 2006)……………………………………………..　　12

*Lopez v. City of Cleveland*,
　　625 F. App'x 742 (6th Cir. 2015)………………………………………..　　13

*Matkovich v. Penn Cent. Transp. Co*.,
　　69 Ohio St.2d 210 (1982)…………………………………………………　　14

*Monell v. New York City Dep't of Soc. Servs.*,
　　436 U.S. 658 (1978) ……………………………………………………..　　12-13, 19

*Norwell v. Cincinnati*,
　　133 Ohio App.3d 790 (1999)……………………………………………..　　14

*Phillips v. Roane County, Tenn.*,
　　534 F.3d 431 (6th Cir. 2008)……………………………………………　　13

*Poe v. Haydon*,
    853 F.2d 418 (6th Cir. 1988)……………………………………………….    14

*Polk County v. Dodson*,
    454 U.S. 312 (1981)………………………………………………………..    19

*Pryor v. Dearborn Police Department*,
    452 F.Supp.2d 714 (E.D. Mich. 2006)…………………………………..    13

*Reeves v. Sanderson Plumbing Products, Inc.*,
    530 U.S. 133 (2000)…………………………………………………………    12

*Saucier v. Katz*,
    533 U.S. 194 (2001)…………………………………………………………    13

*Schultz v. Sillman*,
    148 Fed.Appx. 396 (6th Cir. 2005)………………………………………….    17. 29

*Spadafore v. Gardner*,
    330 F.3d 849 (6th Cir. 2003)……………………………………………….    12

*State v. Berry*,
    72 Ohio St.3d 354 (1995)…………………………………………………..    5

*Strother v. Hutchinson*,
    67 Ohio St.2d 282 (1981)………………………………………………….    20

*Terrance v. Northville Reg'l Psychiatric Hosp.*,
    286 F.3d 834 (6th Cir. 2002)………………………………………………..    17

*Thompson v. County of Medina, Ohio*,
    29 F.3d 238 (6th Cir. 1994)…………………………………………………    16

*Tolan v. Cotton*,
    134 S.Ct. 1861 (2014)………………………………………………………..    13

*United States v. Classic*,
    313 U.S. 299 (1942)…………………………………………………………    12

*United States v. Diebold, Inc.*,
    369 U.S. 654 (1962)…………………………………………………………    12

*Warren v. Prison Health Services, Inc.*,
    576 F.App'x 545 (6th Cir. 2014)………………………………………….    16, 17

*West v. Atkins*,
    487 U.S. 42 (1988)………………………………………………………..    12

*Westlake v. Lucas*,
    537 F.2d 857 (6th Cir. 1976)……………………………………………..    17

*Whitlow v. City of Louisville*,
    39 Fed.Appx. 297 (6th Cir. 2002)…………………………………………    18

*Ziegler v. Aukerman,*
    512 F.3d 777 (6th Cir. 2008)……………………………………………..    12

**Statutes and Regulations**

**Federal**

42 U.S.C. §1983……………………………………………………………..    *passim*

Fed. R. Civ. P. 56…………………………………………………………    11

**State**

O.R.C. 341.01…………………………………………………………..    12

O.R.C. 2125.02…………………………………………………………    20

O.R.C. 2744.03…………………………………………………………    14, 20

O.A.C. 5120:1-8-09(N)………………………………………………...    6

<u>**MEMORANDUM IN SUPPORT**</u>

## I.  INTRODUCTION

This case exposes a widespread pattern and practice of failing to provide inmates and pretrial detainees mental health services with qualified providers that is so pervasive and extended that it demonstrates Summit County Jail intended the conditions to exist. Despite having clearly mandated constitutional duties to provide mental healthcare to those under its care, custody and control, Summit County and the Summit County Jail instead purposefully failed to provide mental health services with qualified providers, failed to train and supervise its deputies to protect inmates and failed to follow state law and even failed to its own Summit County Jail policies.  These failings go beyond mere custom and practice and instead demonstrate a complete systematic failure of the Summit County Jail to provide medical and psychiatric care for inmates who were at a heightened risk for suicide.

Whether Defendants failed in their constitutional duty to provide for Mr. Jordan's serious medical needs while he was within their care, custody and control is a disputed issue of fact that cannot be resolved on summary judgment.  Remarkably, rather than acknowledge that their systematic failures directly resulted in Mr. Jordan's death and work to improve or eliminate the dangerous conditions going forward, Defendants deny they have done anything wrong or, even if there was wrongdoing, that they are entitled to qualified immunity.

## II.  SUMMARY OF ARGUMENT

To succeed on a motion for summary judgment, the Defendants must show that there are no material facts in dispute and that they are entitled to summary judgment as a matter of law. This is impossible for Defendants on this motion.  As will be discussed below Defendants omit numerous material facts that demonstrate their complete failure to provide Mr. Jordan with treatment for his serious medical condition, specifically his suicidal tendencies, with any qualified mental health provider.  Further, in addition to their failure to provide Mr. Jordan with necessary mental health services during his four-month incarceration, Summit County and Sheriff Barry failed to train or supervise Deputy Rawney Trunko to observe, understand and appreciate the risk

1

factors for suicide.

To compound the lack of training and safety procedures, the County Defendants permitted the widespread and pervasive practice of inaccurate recordkeeping for key tours and security rounds to such an extent that it makes it completely impossible to know when inmates were observed or whether they were observed at all.  Here, because of the pervasively inaccurate recordkeeping, Defendants cannot demonstrate that there is no material fact at issue regarding whether Mr. Jordan's suicide could have been prevented.  Plaintiff therefore respectfully requests that the Court deny Defendants' motion for summary judgment because they do not and cannot resolve numerous disputed issues of fact.

## III.    STATEMENT OF RELEVANT FACTS

### A.    Mr. Jordan Never Received a Mental Health Evaluation by a Qualified Provider and Never Received Mental Health Treatment While Incarcerated

The undisputed evidence in this case shows that Mr. Jordan never received mental health services from a qualified provider.  During Mr. Jordan's incarceration, the "mental health coordinator" at the Summit County Jail, Ruthann Paulus-Bland, was not qualified to independently diagnose or treat mental or emotional conditions without clinical supervision.  However, Summit County allowed her to serve as the mental health coordinator for the jail, allowed her to oversee the jail's mental health services and abdicated their responsibility while she and her staff provided grossly inadequate mental health services at the jail.  Declaration of Melissa D. Berry ("Berry Dec.") (Doc#: 44), Exhibit 124 (Paulus-Bland affidavit) at ¶ 11; Exhibit 157 at 60:13-15 (mental health coordinator); Exhibit 123 (Paulus-Bland resume).  Ms. Paulus-Bland also purports to have "supervised" other social workers who were also unqualified to independently diagnosis and treat mental illness or conditions without clinical supervision.  Berry Dec., Exhibit 157 (Ruthann Paulus-Bland deposition ["Paulus-Bland"] at 16:12-17:1 (clinical oversight); 21:21-22:3 (same);

23:13-19 (clinical supervision).  As a direct result, Mr. Jordan and many other jail inmates were never assessed, diagnosed or treated by a qualified mental health professional.[1]

It is undisputed that Mr. Jordan exhibited many of the known risk factors for inmate suicide.  Berry Dec., Exhibit 136 at pp. 1-2 (Byrnes Report); Exhibit 157 at 68:13-14; 73:21-23 (Paulus-Bland).  It is also undisputed that William A. Jones, although unqualified and unsupervised, identified Mr. Jordan as having an adjustment disordered with mixed anxiety and depressed mood and recommended weekly counseling.  Berry Dec., Exhibit 22.  It is also undisputed that Mr. Jordan described himself being depressed and anxious throughout his four-month detention.  Berry Dec., Exhibits 22 and 23.

However, Mr. Jordan was never screened, assessed or reassessed for his risk of suicide by a qualified mental health professional as was clearly indicated by the numerous risk factors for suicide.  Berry Dec., Exhibit 136 (Byrnes Report); Exhibit 157 at 121:5-11 (having multiple risk factors "triggers an assessment"); *Id.* at 129:7-13 ("those risk factors trigger and assessment") (Paulus-Bland).  Instead, Mr. Jordan was only seen by Mr. Jones, an unsupervised licensed social worker.  *Id.* at 40:9-14.  Mr. Jordan was <u>not</u> seen by a qualified mental health professional which, alone, creates a disputed issue of fact precluding summary judgment.

Defendants claim Kimberly Croyle, RN, did not identify Mr. Jordan as having an increased risk of suicide on the day he was admitted into the Summit County Jail and that she did not refer him for mental health services.  Ms. Croyle is not a mental health provider and does not have any specialty in psychiatric nursing that would qualify her to assess Mr. Jordan's risk of suicide.  Further, her documentation flatly conflicts with her later affidavit.  Defendants' Exhibit B (Doc#: 40-3).  The initial health screening Ms. Croyle completed on October 2, 2015, includes a referral to mental health services.  Doc#: 40-3, PageID#: 402.  Defendants cannot obscure Mr. Jordan's risk of suicide by now claiming this referral was "cancelled."  Berry Dec., Exhibit 157 at 33:17-

---

[1] Plaintiff has set for the extensive facts regarding Defendants' reliance on unqualified individuals to conduct and oversee its mental health services in the Summit County Jail in her Motion for Summary Judgment (Doc#: 43.)  To avoid unnecessary repetition, Plaintiff incorporates by reference her statement of facts and arguments from that motion into this opposition.

34:8 (Paulus-Bland). If the order was cancelled, it just further demonstrates Defendants' systemic failures, lack of oversight and callous disregard for the mental health of inmates. However, this conflicts with the documentation showing entry of the order and mental health encounter on October 15, 2015. Doc#: 40-3, PageID#: 413.

The undisputed facts show that Mr. Jordan never received mental health treatment of any kind that would have reduced his risk of suicide while in the Summit County Jail. Berry Dec., Exhibit 136 at p. 4 (Byrnes Report). Although weekly counseling was recommended, Mr. Jordan did not receive any counseling at all while in the jail. Berry Dec., Exhibit 157 at 36:11-25 (no weekly counseling); 130:16-18 (no counseling) (Paulus-Bland). Mr. Jordan never received any no medication to relieve his anxiety or depression. *Id.* at 130:19-22. Further, although the Summit County Jail was aware of Mr. Jordan's underlying chronic medical conditions, he was never referred to the medical director or supervising psychiatrist to evaluate the interplay of his concurrent medical and psychiatric conditions. Berry Dec., Exhibit 157 at 64:11-22 (no referral to medical director); 61:18-22 (no referral to supervising psychiatrist) (Paulus-Bland). These disputed material facts preclude summary judgment.

### B. Knowledge of Persons Outside the Summit County Jail Is Irrelevant

Defendants, who themselves failed to obtain Mr. Jordan's external medical records that would have shown the seriousness of his mental health issues, now attempt to rely on the knowledge of individuals – both lay and professional – from outside the jail who were not in any way responsible for Mr. Jordan's care during his incarceration. Berry Dec., Exhibit 157 at 72:11-73:4 (Paulus-Bland). It was the Defendants, not these outside individuals, who had the duty to care for Mr. Jordan's psychological needs during his incarceration.

Mr. Jordan's family left him in the custody and care of the Summit County Jail because they believed he would be safer in jail where "he would be [] taken care of" than at home. Berry Dec., Exhibit 158 at 82:4-15 (Elizabeth A. Jordan deposition ["Jordan"]). Plaintiff Jordan understood Mr. Jordan's heightened risk of suicide based on his family history and his recent threats of suicide and believed the jail would be better able to keep him safe. That Mr. Jordan did

not tell his wife or others that he was suicidal does not mean he was not suicidal.  Inmates often fail to expressly state that they are suicidal.  *Id.*, Exhibit 157 at 107:20-22 (Paulus-Bland) (inmates are not always open about their suicidal intent).  As with Plaintiff Jordan, nothing in Dan Gourley's affidavit indicates that he was qualified to evaluate Mr. Jordan's mental health or his risk for suicide while incarcerated.  Defendants' Exhibit L (Doc#: 40-13).  Mr. Gourley was meeting with Mr. Jordan to aid in Bible studies not to provide counseling or mental health services.  This simply is not relevant to any material fact at issue.

Defendants also attempt to negate their responsibility to provide mental health care for Mr. Jordan by relying on the interviews and reports from court-appointed experts who were evaluating Mr. Jordan's competency to stand trial.  Defendants' Motion for Summary Judgment ("Def. Mtn.") at pp. 3-4.  In Ohio, the standard for competency is "whether [the defendant] has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him."  *State v. Berry*, 72 Ohio St.3d 354, 359 (1995) (internal quotations omitted).  Whether Mr. Jordan was competent to assist in his defense has absolutely no relevancy to his risk of suicide.  Competence to stand trial and an individual's risk of suicide are two completely different psychological matters.  The fact that people suffer from depression or mental illness does not mean they are insane or are incompetent to stand trial. The Defendants' attempt to conflate those distinct issues is misplaced and offensive.

The Psycho-Diagnostic Clinic report does not include an evaluation of Mr. Jordan's risk for suicide.  Defendants' Exhibit H (Doc#: 40-9).  Certainly, Dr. Robert L. Byrnes, Ph.D., Plaintiff's expert, was only evaluating Mr. Jordan's competency not his risk of suicide.  Defendants' Exhibit A (Doc#: 40-2) at 18:21-19:23.  Dr. Byrnes specifically distinguished an evaluation for competency from evaluating an individual's mental status.  *Id.* at 19:20-22 ("The task is really to look, from a mental standpoint, at the ability of the person to assist in their own defense.")  He also made it clear that Mr. Jordan was an examinee.  *Id.* at 24:6-9.  ("Mr. Jordan was not my patient, nor my client.  He was an examinee.")  Further, he specifically stated that as

part of the competency evaluation he would not have done an evaluation that would have allowed him to form an opinion as to whether Mr. Jordan was suicidal.  *Id.* at 63:17-22.

Defendants also attempt to shift their duty to Mr. Jordan himself for not "kiting" for mental health services.  Just as it was not the duty of third parties to determine Mr. Jordan's risk of suicide, it was not Mr. Jordan's responsibility to diagnose or treat himself.  Defendants were fully aware of his many risk factors and were obligated by law to provide him with mental health services.  Ms. Paulus-Bland also stated unequivocally that the presence of his multiple risk factors entitled Mr. Jordan to a suicide risk assessment. *Id.*, Exhibit 157 at 121:5-11; 129:7-13.

The perceptions of others cannot be used to absolve Defendants of their failure to identify Mr. Jordan's heightened risk of suicide.  Defendants selectively ignore the myriad of objective facts that were known to them that demonstrated his heightened risk for suicide.  Berry Dec., Exhibit 136 at pp. 1-2 (Byrnes Report); Exhibit 157 at 68:13-14; 73:21-23 (Paulus-Bland).  Instead, Defendants continue to deny their obligation to provide care for Mr. Jordan once they were aware of his heightened risk for suicide.

### C. County Defendants Failed to Train Deputies

#### 1. Summit County Deputies Were Not Trained to Observe Risks of Inmate Suicide

The Ohio Minimum Standards for Jails require jails to have a suicide prevention program that includes initial and annual training for staff who work with inmates so they can "recognize verbal and behavioral cues that ***indicate potential suicide and how to respond appropriately.  The plan includes initial and annual training.***" O.A.C. 5120:1-8-09(N)(2) (emphasis added).  Summit County Jail Policy 4:1.0, General Policy on Corrections Training, mandates that correctional officers will receive "Suicide detection, prevention, and response, to be completed annually." Melissa D. Berry Supplemental Declaration ("Berry Supp. Dec."), Exhibit 3 (Summit County Jail Policy 4:1.0).  This training is necessary for deputies to perform their duties.  Berry Supp. Dec., Exhibit 4 (Summit County Jail Policy 7:1.0) ("All staff shall be attentive during their assigned duties, with special attention given to inmates, who may be suicidal, so that appropriate precautions

and referrals may be made.").

In addition to its deliberate indifference to the serious mental health needs of Mr. Jordan,[2] the County Defendants further failed to train its deputies – the front-line observers of inmates – to identify the risk factors for inmate suicide.  Deputy Rawney Trunko ("Deputy Trunko") initially could not recall *any* of the known risk factors for inmate suicide.  Defendants' Exhibit O (Doc#: 40-16) at 31:11-19 (Deposition of Deputy Trunko ["Trunko"]).  Eventually he managed to recall only two. *Id.* at 53:24-54:6 (being withdrawn and not socializing).  Mr. Jordan had at least ten of the commonly accepted suicide risk factors for pretrial detainees.  Berry Dec., Exhibit 157 at 67:6-12; 68:5-69-3; 73:11-23  (Paulus-Bland) (conceding all risk factors Dr. Byrnes identified for Mr. Jordan and adding additional risk factors from the Defendants' documentation).  Defendants even concede Deputy Trunko received suicide prevention training in only four years.  Defendants' Exhibit N (Doc#: 40-15) at ¶19 (Affidavit of Deputy Trunko).  Based on Deputy Trunko's inability to recall the risk factors for inmate suicide, a jury could find that his training was wholly inadequate for him to provide proper observation and ensure the safety of inmates.  Certainly, it would have been impossible for him to recognize any other "verbal and behavioral cues" that would have allowed him to competently perform his duties and reduce the risk of inmate suicide, including Mr. Jordan's suicide.  As such, the adequacy of Deputy Trunko's training in suicide prevention raises material issues of fact that cannot be resolved on a motion for summary judgment.

### 2.    Inaccurate Records Make It Impossible to Know Whether Mr. Jordan Could Have Been Saved

"[S]urveillance of inmates is the most important aspect of the security of the jail[.]"  Berry Supp. Dec., Exhibit 6 (Summit County Jail Policy 10:5.0).  Deputies are expected to "interact with inmates to the extent possible in order to observe the climate of the pod regarding inmate moods, attitudes and anger levels."  *Id.*  In order to document their surveillance, deputies are required to maintain a "pod activity log" (Daily Log) that is a "complete and accurate representation of all pod

---

[2] In her Motion for Partial Summary Judgment, Plaintiff argues that the deliberate indifference standard is no longer applicable to 42 U.S.C. § 1983 actions involving pretrial detainees pursuant to *Kingsley v. Hendrickson*, 135 S.Ct. 2466 (2015), and incorporates those arguments here as well.

activities." Berry Supp. Dec., Exhibit 5 (Summit County Jail Policy 8:2.2.III.A.); Exhibit 121 (Summit County Jail Policy 5:1.0). Deputies at the Summit County Jail frequently violate this requirement. This failure to accurately record lead to inaccurate recordkeeping of when rounds were conducted and who conducted them. Berry Supp. Dec., Exhibit 160 (Deposition of Captain Shane Barker ["Barker"]) at 45:1-15; 46:3-9 (Barker). This falsification of records is tantamount to fraud.

Deputies conduct both security rounds that are manually recorded by deputies in the Daily Log. Deputies also conduct "key tours," which are manually entered in the Daily Log but are also registered when a deputy turns a key in a device on the pod. *Id.* at 36:8-13. Deputies at the Summit County Jail have the custom and practice of recording key tours in the Daily Log for pod activity *before* actually conducting the key tours. A comparison of the Daily Log with the key tour event archive report for February 12, 2016, shows that 10 of the 18 key tours conducted before Mr. Jordan's death were entered in the Daily Log from four and nine minutes before the start of the key tour. Berry Supp. Dec. at ¶13; Exhibit 163. The "1233" key tour when Deputy Trunko discovered Mr. Jordan unresponsive was entered in the Daily Log at 12:27, five minutes before it started. *Id.*, Exhibits 14, 15 and 163. Further, Deputy Trunko's name does not appear in the Daily Log for this key tour. *Id.*, Exhibit 14.

Captain Barker testified that conducting a key tour requires turning a key in four devices on two floors and takes 10 minutes. *Id.*, Exhibit 160 at 36:8-37:5 (Barker). However, none of the 18 key tours conducted on February 12, 2016, took longer than 4 minutes and 12 of the 18 key tours were completed within 2 minutes. Berry Supp. Dec. at ¶¶ 15-17, Exhibit 163.

These inaccuracies raise serious questions of fact, particularly in the circumstance of Mr. Jordan's suicide where every minute was critical. If the key tour had been conducted at 12:27 as documented in the Daily Log instead of five minutes later, those lost minutes would have likely provided an opportunity to save Mr. Jordan's life. Defendants' expert, Dr. Lisa Kohler, M.D., stated that she could not narrow time of death to less than the 41-minutes between the 11:52 and 12:33 key tours. Berry Supp. Dec., Exhibit 162 (Deposition of Dr. Lisa Kohler, M.D. ["Kohler"])

at 42:18-23.  The official time of Mr. Jordan's death was 12:54, several minutes after he was discovered unresponsive. Defendants' Exhibit Q (Doc#: 40-18).  When death can happen within minutes, knowing accurately and exactly when an inmate was observed is critical.  *Id.*. Exhibit 162 at 54:6-12 (approximately 10 minutes for survival); 56:16-20 (death is imminent at 5 minutes and survival beyond 15 becomes nearly impossible); 56:25-57:3 (range of 5 to 20 minutes for death) (Kohler).  Further, Dr. Kohler was unable to state conclusively that further efforts could not have saved Mr. Jordan's life after Deputy Trunko discovered him.  *Id.* at 30:16-31:2.

Defendants rely heavily on Dr. Kohler's testimony that "once pressure was applied to both sides of the neck, survival after approximately 10 minutes" was unlikely, this 10-minute range is meaningless without an established time of death within the 41-minute period between the key tours.  Def. Mtn at p. 7.   When every minute is crucial, whether Mr. Jordan was discovered at 12:27 or 12:33 is significant.  Based only on the detailed review of the February 12, 2016, records, it is evident that the Defendants purposefully permitted a pattern and practice of inaccurate record keeping that makes it impossible to know when Mr. Jordan was actually observed.[3]

## D. There Are Material Issues About If and When Deputy Trunko Observed Mr. Jordan

Remarkably, the 12:15 security round Defendants' highlight that was never mentioned in any of the official investigations of Mr. Jordan's death that were completed *before* the start of litigation.   Berry Supp. Dec., Exhibit 16 (Medical Examiner investigation) and Exhibit 122 (confidential investigation).  Deputy Trunko does not mention the 12:15 security round at all in his investigation interview.  *Id.*, Exhibit 122.  Significantly, in its production of the Confidential Investigation Report, which was completed on March 13, 2016, Defendants included two print outs of the Daily Log showing the purported 12:15 security round that were printed on October

---

[3] Inaccurate documentation and information has been an issue in other recent suicides and suicide attempts at the Summit County Jail.  Berry Supp. Dec., Exhibit 160 at 54:2-6 (Wanda Filing suicide) (Barker); Stephanie Warsmith, "3 former Summit County deputies accused of providing false information on inmate's attempted suicide at jail," Akron Beacon Journal/Ohio.com (posted July 17, 2018) at https://www.ohio.com/akron/news/3-former-summit-county-deputies-arrested-for-providing-false-information-on-inmates-attempted-suicide-at-jail.

16, 2017, more than two weeks after Plaintiff Jordan filed suit, as if those Daily Logs were contemporaneous with the investigation.  The significant omission of the purported 12:15 security round in two separate official reports calls into question the reliability of an entry Deputy Trunko manually entered in the Daily Log that cannot be independently verified.[4]  Certainly, given the extreme inaccuracies in key tour entries, which can be independently verified, when the 12:15 security round actually occurred – if it occurred at all – cannot be readily determined at the summary judgment stage of the proceedings.  Credibility is always a question of fact.

Deputy Trunko's credibility is at issue here.  He has provided conflicting testimony regarding his actions when he discovered Mr. Jordan unresponsive in his cell.  In his affidavit, Deputy Trunko states that he "scanned the cell quickly" to make sure the cell was safe and then checked Mr. Jordan for a pulse. Defendants' Exhibit N (Doc#: 40-15) at ¶9.  In contrast, during his deposition he did not know if he checked for a pulse or waited for medical services. Defendants' Exhibit O (Doc#: 40-16) at 27:15-21 (Trunko).  As noted above, in his affidavit, Deputy Trunko states that he "scanned the cell quickly," however, in his deposition he testified that he first had to make sure it was not a "ruse to attack" him and "assess the situation" with medical services arriving a soon after.  *Id.* at 28:1-18.  Other than possibly checking his pulse, Deputy Trunko did not attempt any resuscitation efforts prior to the arrival of medical services. *Id.* at 27:22-24.  Deputy Trunko also states all his times as only "approximate."  Defendants' Exhibit N (Doc#: 40-15) at ¶¶5, 6.  As will be discussed below, Deputy Trunko's questionable performance is not surprising given his poor reviews.

### E.    Plaintiff Is Entitled to a Negative Inference for Missing Records

Summit County was unable to produce annual performance evaluations for four years of Deputy Trunko's last five years with the Sheriff's Office.  Significantly, his evaluations for 2013, 2014, 2015 and 2017 were not produced.  Berry Supp. Dec. at ¶¶ 5-6.  Deputy Trunko's performance evaluation for 2015 would have covered his performance from February 17, 2015 to

---

[4] Summit County's response to a public records request produced a 1025-page Daily Log for every day of Mr. Jordan's incarceration except February 12, 2016.  Berry Supp. Dec., ¶ 19, Exhibit 165.

February 17, 2016, which overlaps the date of Mr. Jordan's death on February 12, 2016.  *Id.* at ¶¶ 7-9.  Defendants could not explain the missing performance evaluations.  Berry Supp. Dec., Exhibit 160 (Barker) at 80:25-81:11 ("I would have no explanation other than they may have been completed and didn't make it into the personnel file or they may not have been completed"); 83:25-84:4 ("I don't know a reason.") (Barker). The Defendants' failure to produce these performance evaluations entitles Plaintiff to a presumption that information in the missing performance evaluations was damaging to Defendants. *Beck v. Haik*, 377 F.3d 624, 641 (6th Cir.2004) ("Spoliation is the intentional destruction of evidence that is presumed to be unfavorable to the party responsible for the destruction.").

Deputy Trunko was previously admonished in performance evaluations regarding his lackadaisical attitude toward his duties.  Defendants' Exhibit O (Doc#: 40-16) at 56:3-18 ("Deputy Trunko has been reminded not to loiter too long and engage with others in conversations during his rounds in order to remain available for work assignments."); 56:21-57 ("However, Deputy Trunko lacks initiative to search out operational/situational issues and is content to perform only the minimum amount of work to get through the day."); 59:6-11 ("As in years past, Deputy Trunko has made it clear that he seeks no advancement within the agency and is content to do only that which is explicitly required of him. He is a bastion of negativity about the agency and expresses his views to anyone who will listen.") (Trunko).

Plaintiff Jordan is entitled to a negative inference because the records were not produced.

## IV.    STANDARD ON MOTION FOR SUMMARY JUDGMENT

"Summary judgment is appropriate only if the pleadings, depositions, answers to interrogatories, and affidavits show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law."  *Bobo v. United Parcel Service, Inc.*, 665 F.3d 741, 758 (6th Cir. 2012).  The burden to show there is no genuine issues of material fact falls on the party seeking summary judgment.  *Id.*

Summary judgment may be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

Civ. P. 56(a). The evidence presented is construed in the light most favorable to the non-moving party, which is given the benefit of all favorable inferences that can be drawn from them. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Cox v. Kentucky Dept. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995); *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150 (2000). "The central issue is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Spadafore v. Gardner*, 330 F.3d 849, 852 (6th Cir. 2003) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-252 (1986)).

## V.      ARGUMENT

### A.      Defendants Violated 42 U.S.C. §1983

"To prevail on a § 1983 claim, a plaintiff need only show that he or she was deprived of a constitutional right by a state actor." *Ziegler v. Aukerman*, 512 F.3d 777, 781 (6th Cir. 2008); *see also Kottmyer v. Maas*, 436 F.3d 684, 688 (6th Cir. 2006) (observing that to state a claim under Section 1983 a plaintiff need only establish that "(1) the conduct in controversy was committed by a person acting under color of law, and (2) the conduct deprived the plaintiff of a federal right, either constitutional or statutory."). Thus, in determining whether Plaintiff Jordan is entitled to recovery under §1983, the only issues for this Court's consideration are whether Defendants violated Mr. Jordan's federally protected rights.

Municipalities and local governments are persons subject to suit for damages under 42 U.S.C. §1983. *Monell v. Dept' of Soc. Servs. of New York*, 436 U.S. 658, 701 (1978). A suit against a public servant is equivalent to a suit against the municipality. *Brandon v. Holt*, 469 U.S. 464, 471 (1985). Sheriff Barry is an elected official and has charge of the county jail. O.R.C. 341.01. It is his responsibility to ensure the safety of inmates and "govern and regulate the jail according to the minimum standards for jails in Ohio[.]" *Id.* Sheriff Barry, in his official capacity, and Deputy Trunko, in his individual capacity, were both persons acting under color of state law for Section 1983 claims. *West v. Atkins*, 487 U.S. 42, 49 (1988) (quoting *United States v. Classic*, 313 U.S. 299, 326 (1942).

**B.      Defendants Are Not Entitled to Qualified Immunity**

      **1.      Defendants Are Not Entitled to Qualified Immunity for § 1983 Claims**

"In resolving questions of qualified immunity at summary judgment, courts engage in a two-pronged inquiry." *Lopez v. City of Cleveland*, 625 F. App'x 742, 745 (6th Cir. 2015) (quoting *Tolan v. Cotton*, 134 S.Ct. 1861, 1865 (2014)).   Under the first prong, a court must determine whether "the facts, '[t]aken in the light most favorable to the party asserting the injury, ... show the officer's conduct violated a [federal] right [.]' " *Tolan*, 134 S.Ct. at 1865 (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). Under the second prong, a court must determine whether the right was "clearly established" at the time of the alleged violation. *Id.* at 1866. "[U]nder either prong, courts may not resolve genuine disputes of fact in favor of the party seeking summary judgment." *Id.*

In *Pryor v. Dearborn Police Department*, the court rejected the defendants' qualified immunity arguments because the law prohibiting the neglect of an inmate's serious medical needs had been clearly established by the Sixth Circuit in 1972 in *Fitzke v. Shappell*, 468 F.2d 1072, 1076 (6th Cir. 1972). *Pryor*, 452 F.Supp.2d 714, 722 (E.D. Mich. 2006).  Indeed, it is well settled in this Circuit that an inmate's "psychological needs may constitute serious medical needs, especially when they result in suicidal tendencies." *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001) (quoting *Horn v. Madison County Fiscal Ct.*, 22 F.3d 653, 660 (6th Cir. 1994)).

Defendants argue that they are entitled to summary judgment because government officials "performing discretionary functions" are entitled to immunity in their individual capacities.  Def. Mtn at p. 11, citing *Phillips v. Roane Cnty.*, 534 F.3d 531, 538 (6th Cir. 2008).   Providing care to inmates with serious medical needs, including psychological needs, is not discretionary. Therefore, none of the Defendants, official or individual, are entitled to qualified immunity.

Completely unmoored from any legal basis, Defendants also argue that if the Court grants qualified immunity to Deputy Trunko, *ipso facto*, then the County Defendants have no liability. Def. Mtn at p 16.  However, the Sixth Circuit has specifically held that even where an individual defendant may be entitled to qualified immunity, the municipality may still be found independently

liable.  *Baker v. Union Township*, 587 Fed.Appx. 229, 237 (6th Cir. 2014), citing *Monell*, 436 U.S. 658 (1978) (allowing §1983 liability for municipal authorities based on the authority's unconstitutional policies).

### 2. Deputy Trunko Is Not Entitled to Qualified Immunity for Plaintiff's State Law Claims

An individual defendant cannot claim immunity under Ohio law if that Defendant acted in bad faith or in a wanton or reckless manner. O.R.C. 2744.03(A)(6)(b).  In this case, there is an issue of fact regarding when and if Deputy Trunko performed a security round and observed Mr. Jordan at 12:15 on the day of his death.  If Deputy Trunko failed to conduct that security round at 12:15, failed to conduct the security round at all or falsely or inaccurately recorded the security round, reasonable minds could find that he acted in bad faith or in a wanton or reckless manner within the meaning of Ohio law.

Bad faith has been defined as "conduct that involves 'a dishonest purpose, conscious wrongdoing, the breach of a known duty through some ulterior motive or ill-will partaking of the nature of fraud, or an actual intent to mislead or deceive another.'" *Norwell v. Cincinnati*, 133 Ohio App.3d 790, 813 (1999).  Ohio case law indicates that one acts recklessly when he or she engages in a perverse disregard of a known risk.  *Jackson v. Butler County Bd. Of Comm'rs*, 76 Ohio App.3d 448, 454 (1991).  Further, Ohio follows the general rule that the determination of whether an action was reckless is a question for the jury. *Fabrey v. McDonald Village Police Dept.*, 70 Ohio St.3d 351, 356 (1994); *Matkovich v. Penn Cent. Transp. Co.*, 69 Ohio St.2d 210, 214 (1982); *Irving v. Austin*, 138 Ohio App.3d 552, 556 (2000).  Reasonable minds could easily view Deputy Trunko's inactions when under a duty to act meeting the definition of "bad faith" or "recklessness" under Ohio law.  Clearly, falsifying records satisfies those standards as well.

### 3. Qualified Immunity Is Not Appropriate for Summary Judgment

Summary judgment on the ground of qualified immunity is inappropriate when "there is a factual dispute (*i.e.*, a genuine issue of material fact) involving an issue on which the question of immunity turns, such that it cannot be determined before trial whether the defendant did acts that

violate clearly established rights." *Poe v. Haydon*, 853 F.2d 418, 425-26 (6th Cir. 1988) (citations omitted). Ultimately, "where the legal question of qualified immunity turns upon which version of the facts one accepts, the jury, not the judge, must determine liability." *Green v. Throckmorton*, 681 F.3d 853, 864 (6th Cir. 2012).  Because Defendants deny Plaintiff Jordan's factual allegations summary judgment is therefore neither available nor appropriate.

### C.     Violations of the Fourteenth Amendment Do Not Require Subjective Knowledge

Defendants erroneously argue that Plaintiff must prove Defendants acted with deliberate indifference to Mr. Jordan's serious medical needs and when they failed train Deputy Trunko to recognize the risk factors for inmate suicide. Def. Mtn at pp. 10-11.  However, In *Kingsley v. Hendrickson*, ___ U.S. ___, 135 S.Ct. 2466, 2472-74 (2015), the Supreme Court held that because pretrial detainees enjoy greater constitutional protections than convicted prisoners, they need only show that an official's course of action was objectively unreasonable, not deliberately indifferent. Although *Kingsley* concerned a pretrial detainees' Fourth Amendment excessive force claim, its holding has implications for all pretrial detainee's Fourteenth Amendment claims. In *Kingsley*, the Court only required the pretrial detainee to show that "the force purposely or knowingly used against him was objectively unreasonable." *Kingsley*, 135 S.Ct. at 2473.  This "objectively unreasonable" test should also be the standard for a pretrial detainee's denial of health care claim.

In *Kingsley*, the Court held that "pretrial detainees (unlikely convicted prisoners) cannot be punished at all, much less maliciously and sadistically," and that proof of intent to punish was not required for a pretrial detainee to prevail on an excessive force claim. *Id.* at 2475 (citations omitted).   Further, pretrial detainees need only provide "objective evidence that the ***challenged governmental action*** is not rationally related to a legitimate governmental objective or that it is excessive in relation to that purpose." *Id.* (emphasis added).

Defendants have not and cannot articulate any "legitimate governmental objective" that would justify the Summit County Jail's complete failure to provide mental health services to Mr. Jordan with qualified providers.  Nor have Defendants articulated any legitimate governmental

objective that would justify their failure to train Deputy Trunko. Certainly, no legitimate governmental objective is achieved when deputies are not required to maintain accurate records of their observations of inmates as required under Ohio law and jail policy. There is simply no defense to these violations.

Although Plaintiff Jordan is not required to show Deputy Trunko had subjective knowledge of Mr. Jordan's serious medical needs under *Kingsley*, a genuine issue of material fact as to deliberate indifference can be based on a strong showing of the objective component. *Warren v. Prison Health Services, Inc.*, 576 F.App'x 545, 554-55 (6th Cir. 2014). Here, there was an extremely strong objective showing that Mr. Jordan was at heightened risk for suicide. Certainly, Deputy Trunko had objective and subjective knowledge when he observed Mr. Jordan unresponsive in his cell. There are also disputed material issues of fact as to when, exactly, Mr. Jordan was discovered and how long it took Deputy Trunko to respond.

### D. Defendants Caused Mr. Jordan to Suffer the Deprivation of His Fourteenth Amendment Rights

Even under the deliberate indifference standard, Defendants are not entitled to summary judgment as a matter of law. Prisoners are entitled to necessary medical care under the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976). Pretrial detainees, such as Mr. Jordan, are afforded the same right under the Fourteenth Amendment. *Thompson v. County of Medina, Ohio*, 29 F.3d 238, 242 (6th Cir. 1994). To prevail on a claim of cruel and unusual punishment resulting from the denial of medical care, the plaintiff must show that the person(s) acting under color of state law acted with deliberate indifference. *Farmer v. Brennan*, 511 U.S. 825, 836 (1994).

Deliberate indifference to a known or observable suicide risk is a violation of the Eighth Amendment's ban on cruel and unusual punishment. Prior to *Kingsley*, to succeed on an action for deliberate indifference to medical needs, plaintiffs have been required to show: (i) an objectively substantial risk of serious harm, and (ii) that the jail or county officials were "subjectively aware of the risk." *Harbin v. City of Detroit*, 147 F. App'x 566, 570 (6th Cir. 2005). Under this pre-

*Kingsley* analysis, the plaintiff had to show both an objective component – that the medical need at issue was "sufficiently serious" and a subjective component – that the official being sued "subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw that inference, and that he disregarded that inference." *Comstock*, 273 F.3d at 702-703, quoting *Farmer*, 511 U.S. at 834, 837; *Schultz v. Sillman*, 148 Fed.Appx. 396, 399 (6th Cir. 2005); *Horn*, 22 F.3d at 660 (recognizing that prisoner's psychological needs may constitute serious medical needs which require medical attention.  Further, once officials have knowledge that a prisoner is suicidal, they cannot ignore his medical needs. *Comstock*, 273 F.3d at 702.

As for the first prong of the test, it is well settled in this Circuit that an inmate's "psychological needs may constitute serious medical needs, especially when they result in suicidal tendencies." *Comstock*, 273 F.3d at 703 (quoting *Horn*, 22 F.3d at 660 ).  Although there is no general right to "be screened correctly for suicidal tendencies," once a prison official has been "alerted to a prisoner's serious medical needs," including his psychological needs, the official has an obligation to offer medical care.  *Id.* at 702 It is possible for the treatment provided to be "so woefully inadequate as to amount to no treatment at all."  *Westlake v. Lucas*, 537 F.2d 857, 860 n. 5 (6th Cir. 1976); *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011).  Here, Defendants were aware of Mr. Jordan's many objective risk factors for suicide and still failed to provide mental health services with qualified individuals.  This was woefully inadequate.

When analyzing the denial of medical care under the subjective prong, plaintiff must show that defendants have a "sufficiently culpable state of mind."  *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000), quoting *Farmer*, 511 U.S. at 834.  This subjective component is "determined in light of the prison authorities' current attitudes and conduct."  *Helling v. McKinney*, 509 U.S. 25, 36 (1993).  However, defendants in deliberate indifference cases do not often admit to being aware of the risk of serious harm to the plaintiff. *Estate of Carter v. City of Detroit*, 408 F.3d 305, 313 (6th Cir. 2005).  Instead, a genuine issue of material fact as to deliberate indifference can be based on a strong showing of the objective component. *Warren*, 576 F. App'x at 554-55. "[W]hether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to

demonstration in the usual ways, including inference from circumstantial evidence." *Terrance v. Northville Reg'l Psychiatric Hosp.*, 286 F.3d 834, 843 (6th Cir. 2002) (quoting *Farmer*, 511 U.S. at 842-43). When the need for medical care is obvious, a reasonable fact finder may conclude that prison officials were aware of a risk of serious harm. *Dominguez v. Correctional Medical Services*, 555 F.3d 543, 550 (6th Cir. 2009) (internal citation omitted).   Whether *in fact* they perceived, inferred or disregarded that risk *is an issue for trial*."   *Clark-Murphy v. Foreback*, 439 F.3d 280, 290 (6th Cir. 2006) (emphasis added).

Here, there is an extraordinarily strong showing of the objective prong that Mr. Jordan had multiple risk factors for suicide, entitling him to an assessment by a qualified mental health provider.  Berry Dec., Exhibit 136 (Byrnes Report); Exhibit 157 at 121:5-11; 129:7-13 (Paulus-Bland).  Tragically, Mr. Jordan was *never* evaluated by a qualified mental health provider, and *never* received any counseling or medication during his four-month incarceration. Mr. Jordan's serious medical needs were ignored, which resulted in his death.

Deputy Trunko's lack of training about suicide prevention cannot and does not insulate him from knowledge where the objective factors are so pervasive that even other inmates observed them.  Berry Supp. Decl., Exhibit 122 (Confidential Investigation) ("[Mr. Jordan's] nervousness has increased the past couple of weeks, to the point that he was 'freaking out' about his trial"; "described his as 'depressed'"; "observed [Mr. Jordan] on the telephone and indicated he appeared to be upset about something"; "described [Mr. Jordan] as being very depressed and worried about his case").   At a minimum, Mr. Jordan's emotional state raises disputed material issues of fact that cannot be resolved at the summary judgment stage.

### E. Summit County, Ohio, and Sheriff Barry's Failure to Train and Supervise Caused the Constitutional Violations

Municipal or governmental entities can be held liable under 42 U.S.C. § 1983 if there is evidence of a systematic failure to train. *Whitlow v. City of Louisville*, 39 Fed.Appx. 297, 302 (6th Cir. 2002); *Gray v. City of Detroit*, 399 F.3d 612, 617 (6th Cir. 2005).  A systematic failure may be proven or inferred from circumstantial evidence: "Jurors are permitted to consider

circumstantial evidence and make inferences in determining whether Sillman had the requisite level of culpability." *Schultz v. Sillman*, 148 Fed.Appx. at 403 fn. 2.

In *Gray* the Sixth Circuit recognized that the failure to plan or train for suicide prevention might raise questions of liability under *Monell*. *Gray*, 399 F.3d at 389. Here, the facts show that Summit County and Sheriff Barry failed to provide annual suicide prevention training as mandated by state law and their own policies and that the training they did provide was so inadequate that Deputy Trunko, a 26-year veteran of the Sheriff's Office could identify only two vague suicide risk factors. Defendants' Exhibit O (Doc#: 40-16) at 53:24-54:6 (Trunko).

Reasonable minds could find that the wholesale failure of the County Defendants to train demonstrates a deliberate indifference to the serious medical needs of inmates, including Mr. Jordan, thereby subjecting them to liability.

### F. Summit County's Official Policies and Customs Deprived Mr. Jordan of His Constitutional Rights

A municipality is liable when its officials with policymaking authority establish and engage in a customary pattern of behavior resulting in the infliction of injury. *Monell*, 436 U.S. at 694. In order to substantiate a Section 1983 *Monell* claim against a municipality, a plaintiff must allege that the municipalities' official policy or custom actually serves to deprive an individual of his or her constitutional rights. *Gregory v. City of Louisville*, 444 F.3d 725, 752 (6th Cir. 2006). A political subdivision is liable under Section 1983 if its official policies or informal customs are the proximate cause of a constitutional violation. *Heflin v. Stewart County, Tennessee*, 958 F.2d 709, 716 (6th Cir. 1992); *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989)( "[A] municipality can be found liable under § 1983 only where the municipality itself causes the constitutional violation at issue.") (citing *Monell*, 436 U.S. 658 (1978)). Here, Plaintiff Jordan has established the existence of an unconstitutional policy and demonstrated a causal link between the policy and the alleged injuries at issue. *Bennett v. City of Eastpointe*, 410 F.3d 810, 819 (6th Cir. 2005). To meet her burden, Plaintiff Jordan has shown that the official policy or custom was a moving force behind the constitutional violation. *Polk County v. Dodson*, 454 U.S. 312, 325 (1981).

### G.   Deputy Trunko's Reckless Disregard for Inmate Safety Caused the Wrongful Death of Mr. Jordan

Plaintiff has submitted sufficient evidence for a reasonable jury to conclude that Deputy Trunko's inaction caused the death of Mr. Jordan. O.R.C. 2125.02 provides a statutory right of action for wrongful death, to be brought in the name of the personal representative of the decedent. The tort has three elements: (1) the existence of a duty owing to plaintiff's decedent, (2) a breach of that duty, and (3) proximate causation between the breach of duty and death.  *Estate of Ridley v. Hamilton Cnty. Bd. of Mental Retardation & Developmental Disabilities*, 102 Ohio St.3d 230, 233 (2004). The question of proximate cause is normally a fact question for the jury. *Strother v. Hutchinson*, 67 Ohio St.2d 282, 288 (1981).

A reasonable jury could find that Deputy Trunko recklessly caused Mr. Jordan's death when he failed to properly observe him and/or when he failed to respond adequately when he discovered Mr. Jordan unresponsive.  Plaintiff argues that the wrongful death claim against Deputy Trunko is concomitant with the claim that Defendants failed to provide mandated mental health services to Mr. Jordan. Given that material facts are in dispute on the Section 1983 claims and that those same facts would establish bad faith and recklessness that would defeat immunity under O.R.C. 2744.03(A)(6)(b), summary judgment should be denied to Deputy Trunko on this claim as well.  *See Hopper v. Phil Plummer*, 887 F.3d 744, 759-60 (6th Cir. 2018) (summary judgment on state law wrongful death claim denied when genuine issues of material fact were present on excessive force claim).  For this reason, summary judgment is not appropriate on the wrongful death claim.

## VI.   <u>CONCLUSION</u>

Based on the foregoing, Plaintiff Jordan respectfully requests that this Court deny Defendants' motion for summary judgment on her remaining claims against Summit County, Sheriff Steve Barry and Deputy Rawney Trunko.  Defendants violated Mr. Jordan's constitutional rights to receive medical care for his serious mental health needs and cased his wrongful death.

Dated: September 11, 2019                    Respectfully submitted,

                                             /s/ Melissa D. Berry
                                             **Melissa D. Berry** (#0061935)
                                             *Attorney for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 11, 2019, a copy of the foregoing opposition was filed electronically.  Notice of this filing will be sent to all parties by operation of the court's electronic filing system.

                                             /s/ Melissa D. Berry
                                             **Melissa D. Berry** (#0061935)
                                             *Attorney for Plaintiff*